AIKEN v. NATIONAL TUBE CO. et al. (two cases).

(Circuit Court, N. D. Ohio, E. D. August 6, 1907.)

Nos. 6,877, 6,986.

PATENTS—VALIDITY AND INFRINGEMENT—APPARATUS FOR CONVEYING METAL PLATES.

The Aiken patents, No. 450,360, for an apparatus for conveying and cooling metal plates, and No. 492,951, for an apparatus for straightening metal plates, together cover a combination of parts, which, co-acting and operating successively as to each particular plate, convey the plates from the rolls in a mill to the trimming shears, straightening and cooling them on the way. The combinations are new and useful, and the patents disclose invention; also *held* infringed.

In Equity. On final hearing.

Christy & Christy and Kline, Tolles & Goff, for complainant.
J. Snowden Bell and James I. Kay, for defendant.

TAYLER, District Judge. These two cases, heard together are brought charging infringement of patents Nos. 450,360 and 492,951, issued April 14, 1891, and March 7, 1893, respectively, to the complainant. The first is for an apparatus for conveying and cooling

metal plates, the second for an apparatus for straightening metal plates. If these patents are valid, the defendants are undoubted infringers.

A prior patent, now expired, was issued to the complainant for a method of cooling metal plates, and it is one of the contentions of the defendants—perhaps the chief contention—that, if any rights were ever acquired by complainant in connection with this process, it was by virtue of that early patent. If we consider the history of the art of handling large metal plates from the time they leave the rolls until they reach the shears, where they are trimmed and cut to suitable lengths, we find it as shown by the three patents of Aiken about as follows: Prior to Aiken's first patent, issued in 1887, it had been the common custom to place these large plates, as they came hot from the rolls, one on top of another in piles or on cars, and there to permit them to remain until cool enough to be handled, when they were taken to the shears to be trimmed. As they were rolled in different sizes, they would, when thus piled, cool unequally, with the result that warping and distortion would occur, and thereby cause large waste in the shearing. To obviate this difficulty, the device covered by the patent of 1887 was invented. With the question of its novelty we are not now concerned. Briefly stated, Aiken's method illustrating his patent of 1887 for cooling metal plates was this: When the plate had made its last pass through the rolls, it was delivered upon what he called a "roller," or feed table, extending from the rolls to the shears. This table was simply a series of rollers at suitable distances from each other, and operated by proper mechanism. The plate having been delivered on to the roller table, the rollers, revolving at slow speed, carried the plate slowly along to the shears. In its progress the plate was exposed to the air on all sides, and as it was never stationary, and the points of support were constantly changing, it had no opportunity to bend or buckle by its own weight even if hot enough to do so. The result claimed was a uniform cooling. If, when the end of the table was reached, the plate was not sufficiently cooled, the rollers were reversed, and the plate was carried back and forth until suitably cooled. This device was sufficient for its immediate purpose, but it required considerable space longitudinally, and it did not suitably dispose of the plate either by keeping it out of the way of its successor or by conveying it to the shears. To meet this difficulty the patent of 1891—the first patent in suit—was taken out. This patent covered a "table for conveying and cooling" metal plates. The device consisted of the combination of two conveying tables provided with driven rollers, and extending substantially parallel to each other, one table leading from the rolls and the other table leading to the shears, with transfer mechanism adapted to transfer the plates from one table to the other, and giving opportunity to cool the plate while being thus transferred. The transfer mechanism is simple in its operation, though complicated in its details. The general operation of the apparatus is as follows: The plate, having made its last pass through the rolls, is conveyed on to the roller table as in the previous device, and, while there, carried back and forth until sufficiently stiffened and the warped and buckled portions straightened.

Then the transfer mechanism is put into operation. Heavy endless sprocket chains passing from the outside of the first roller table over to the shears table are elevated so as to lift the stiffened plate above the rollers, and carry it at such speed and in such manner as may be desired over to the shears table, where, by lowering the chains, the plate comes to rest, thereafter to be carried along this table to the shears. I have not attempted to do more than sketch in outline this device and its operation. Its relation to the preceding patent is apparent, and its development obvious.

But something remained yet to be done before satisfactory results could be accomplished. The practice of carrying the plate back and forth while it cooled enough to lose plasticity was, as we see it now, a waste of time, of space, and of power. So, also, the work of straightening these heavy and very hot plates could be done but imperfectly and with great inconvenience under the conditions thus existing. Then came the patent of 1893, the second patent in suit. The idea of this improvement developed along with the development of the patent of 1891, but no necessity for working drawings then arose, and the application for the patent was delayed until June, 1892. The operation of the complainant's device as made under this last patent, in combination with the preceding patented device, is substantially as follows: The plate or sheet, having passed from the rolls, comes to rest on the first, or feed, table as in the device made under the first patent in suit. Parallel to and inside of the feed table is a straightening table. This is built up in sections with a flat surface and transverse gaps. On the outer edge of the table is a continuous flange or rib. This flange forms the stationary abutment of the straightening mechanism. The endless chains and guides between the rollers of the feed table, being raised, lift the plates above the level of the straightening press. The supporting chains are then put in motion, and carry the plate to a point over the press upon which it is lowered and deposited by depressing the chains. Then, by suitable mechanism, movable heads are projected simultaneously against the plate, and force it edgewise against the flange or rib forming the stationary abutment, thereby straightening the edges and bringing them into proper alignment. The movable heads are then loosed, the chains and guides operating through the transverse openings are raised, the plate is lifted, and by the transfer movement of the chains carried over the flange and toward the shears table. In practical operation, when one plate is laid on the straightening table, a second plate follows it into position on the feed table, and, as the first plate leaves the straightening table, the second takes its place, and a third takes the place of the second on the feed table. The transfer mechanism heretofore described carries the plates over to the discharge or shears table.

Different steps of the operation therefore are performed simultaneously upon a succession of plates, so that the machine is, in fact, operated step by step upon an indefinite series of plates as fast as they come from the rolling mill, the chains being moved each time for a distance a little more than the width of each plate, and the space between the straightening table and the discharge, or shears table, is

occupied by a series of plates lying almost edge to edge, which are gradually cooled upon the open bed. When we look at this apparatus as a whole, it seems very simple and almost obvious; yet no one had before accomplished what Aiken accomplished by it.

Here was a situation to be met. Plates were to be rolled and sheared. If they were small or not numerous, no serious problem presented itself. Of course, it was perfectly apparent that between the rolling and the shearing they must cool at least enough to be rigid, and at some stage they must be straightened. It is quite as apparent that the time to straighten them is when they are measurably plastic. But nothing could be more difficult to handle than a red-hot plate of great weight; and it must be handled as well to keep it out of the way of the endless procession of its successors as to cool and straighten it. And so these two last Aiken patents completely met this situation and solved the problem; for they permit all of these essential processes to be carried on, and their perfect results to be achieved without an instant's delay, without the slightest interference by one plate with another and practically automatically. The capacity of a mill has been multiplied many times. Plates weighing several tons can be handled and one man operates the entire mechanism. Such vast increase in the capacity of a mill's output, due to this simple device and arrangement of co-ordinate operations, furnishes the highest evidence of the value and of the propriety of a patent. The result has been a practically universal recognition and use. This is the first infringement.

The following may be said to fairly enumerate, in a nontechnical way, the elements of the second patent, which combined co-act to produce the desired result of safely, economically, and expeditiously delivering to the shears a rolled plate in suitable condition to be sheared: (1) A feed table comprising driven rollers. (2) A straightening bed, having transverse gaps. (3) A conveying table leading to the shears. (4) Endless conveying chains extending between the rollers of both tables, and through the transverse gaps of the straightening bed, from the outer side of the feed table to the outer side of the shears table. (5) Mechanism for lifting the conveying chains so as to engage and support the plates. (6) Mechanism for moving the conveying chains, while supporting and carrying the plates, from the feed table to the straightening bed, and from the straightening bed to the shears table. (7) The distance and time of travel between the feed table and the shears table (the straightening bed being suitably interposed) so graduated as to permit sufficient cooling of the plate before it reaches the shears. Translated into ordinary terms, we find that the efficiency and novelty of these devices depend upon the arrangement of their several parts, constituting the method of handling hot plates between the rolls and the shears; the things necessary to be done in this interval being: First. To so cool the plates while in a plastic condition that they will not bend. This is done by conveying them upon moving surfaces, and constantly changing the points of contact. Second. To straighten the plates which are naturally more or less bent and crooked from passing through the rolls. Third. To continue the cooling process after the plastic state has been

passed, so that there will be uniformity in the cooling. Fourth. To so handle the plates that during all of these processes the plates will keep out of each other's way so as not to interfere with the continuous operation of the rolls, and also so as to progress constantly towards the shears. From this enumeration of elements, all acting to produce the final result, it seems to be very clear that we have here no mere aggregation of elements, but a specific operative arrangement of mechanism both new and useful. This reasoning applies to both patents, considering the separate functions of each. In the last patent there was not merely a new form of straightening bed, not merely a placing of that bed in juxtaposition to the other parts of the mechanism, but it was mechanically combined and operated with it. Assuming that my conception of this mechanical co-ordination is right, the authorities in support of the position here taken are numerous and undisputed.

I find both patents valid, and that the defendants infringe.

Decrees may be entered accordingly.