## MILLER & Others *v.* FOREE & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KENTUCKY.

Argued November 2, 1885.—Decided December 14, 1885.

The application of an old process or machine to a similar or analogous subject,
with no change in the manner of applying it, and no result substantially
distinct in its nature, will not sustain a patent, even if the new form of re-
sult has not before been contemplated.

*Pennsylvania Railroad Co.* v. *Locomotive Truck Co.*, 110 U. S. 490, affirmed.

The facts which make the case are stated in the opinion of
the court.

*Mr. Arthur Stem* and *Mr. George Harding* for appellants.
[*Mr. James A. Beattie* was also on appellants' brief.]

*Mr. Benjamin F. Thurston* for appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is a suit brought by the appellants against the appellees,
complaining of the infringement of a certain patent granted
to Anton Miller and Christian Worley, two of the complainants,
for an alleged improvement in finishing tobacco plugs and in
marking the same.  A patent was applied for September 23,
1876, and was granted on the 5th day of December, 1876.  It
was subsequently surrendered and reissued on the 29th of
January, 1878.  The improvement, as declared in the specifica-
tion, consists in pressing in the side of the plug, during the
process of manufacture, letters or marks, so as to be inefface-
able.  The description contained in the re-issued patent, which
does not differ materially from that contained in the original,
after referring to the illustrative drawings, which are not
necessary to the understanding of the invention, proceeds as
follows:

" In carrying out our process, the plugs are packed with
alternating plates in the finisher, so that they take their per-

manent set with the impression in them, whereby said impression is preserved ineffaceable.

" We have used the process of finishing tobacco as described in patent No. 181,512, issued to Worley and McCabe, on the application of Christian Worley, and dated August 22, 1876, but this system of marking may be used in conjunction with the ordinary finishing process by having the devices in relief, on pressure plates used in the last pressing.

" Our preferred manner of forming the letters on the plates A' is by stamping them therein, and then making the letters solid by filling in the concave side of the letters with melted metal, such as solder, so that said letters will withstand the extreme pressure to which they are subjected in the finishing box.

" In constructing said compress plate, however, any projecting surfaces in relief, either formed upon the plate or loose from the same, would secure the same result and may be employed."

From this description it appears that the process consists simply in attaching or placing raised characters on the metallic plates which are interlaid between the layers of tobacco to give it a smooth surface in its final compression, which characters leave their imprint in the side of the plugs.

The claim of the original patent was for—

" The mode of simultaneously stamping and finishing tobacco, consisting of tightly compressing the plugs between plates having in relief letters in alternating series, substantially in the manner described."

The claim of the re-issued patent is for—

" 1. The described process of marking plug tobacco, which consists in impressing letters or other marks directly into the side of the plug during the process of manufacture, and by the pressure employed in making the plug, substantially as described.

" 2. A tobacco plug marked with an impression, substantially as described."

The second claim of the re-issue was afterwards abandoned and formally disclaimed in the Patent Office. The first claim is, in its terms, broader than the claim of the original patent.

It is a general claim for the described process of impressing letters or marks directly into the side of the plug during the process of manufacture. This embraces the application of the process at any stage of the manufacture, either in the moulding process or the finishing process. But if it should be confined by construction to the latter, as in the claim of the original patent, it would still apply to every kind of finishing process, whether separate from the moulding process or not.

The question, then, will be, whether this claimed invention was anticipated by prior invention or use in the art.

Impressions of letters, figures, and other marks have for a long period been made by compression upon plastic substances, such as cakes of soap and chocolate, bars of lead, balls of butter, sealing wax, the leather covers of books, &c. It was not strange, therefore, that the same process for producing a like result should have been applied to tobacco when moulded and compressed into solid plugs of definite form. An English patent was granted to Thomas and George Cope in April (specification filed October), 1868, for improvements in machinery for moulding, pressing, and stamping Cavendish and other tobacco into any desired form by suitable dies. These dies have any desired form and design, and, when filled with tobacco, a powerful pressure is applied by means of a metallic die-piece, which gives to the tobacco a durable form and solidity, with the impression of the shape and design of the dies. In describing the machine and its operation, the patentees say : " This machine is useful for various purposes in manufacturing tobacco ; it can be advantageously employed in stamping or forming devices of various kinds on tobacco."

Another patent was granted to Gibson and others in April (specification filed October), 1874, for a mode of heating, pressing, and curing roll and coil tobacco, in the course of which the tobacco (in the case of coil) is alternated with metallic plates, between which and the coils are placed thin wooden discs of a size to match the plates, and between these and the coils of tobacco a thin metal plate, bearing the manufacturer's name, abode, trade-mark, &c. It is then heated, and afterwards submitted to great pressure. And the inventors add : " When the

tobacco has cooled down sufficiently it is removed, and the sheath-pipe being withdrawn by gentle pressure, the metallic discs, scaleboard discs, and name tablets are separated from the tobacco, and the tobacco is found to be impressed with the name or marks from the tablets, the rest of its surface having the impression of the wooden disc, smooth, or showing the grain of the timber. The tobacco, then thoroughly cured and pressed, is fit for sale."

Charles Siedler obtained a patent of the United States, dated January 12, 1875, re-issued October 24, 1876, on application filed April 26, 1875, for impressing into the body of the plugs of tobacco metallic labels with raised letters, &c., either covered or not covered by the outside wrapper, whereby he obtained distinct and durable impressions. He says : " Before giving the plug of tobacco its final pressure the metal B *b* [the label] is placed in proper position upon it by an attendant, and by subsequent powerful pressure the label is sunk into the body of the tobacco so that its face is about flush with the outer surface thereof, and its points *b* sink quite deeply into the most dense mass. It adheres firmly. . . . The plugs thus impressed with the hard labels, presenting the letters in relief, are then wrapped in a large leaf of properly dampened tobacco, A', and again powerfully compressed. The label appears beneath the wrapper of the finished plug, and is not liable to be removed by any ordinary or extraordinary cause."

In 1867 or 1868 Fisher and Harris, of St. Louis, fitted into a mould for plug tobacco, a metallic plate, having on its face the word " Blackberry," in raised letters, in the form of types, which produced on the surface of the plug, as it was pressed in the mould, the word "Blackberry." Many plugs were made in this mould, and received the said impression, from the time of its construction until 1876, and were sold in the market. Boyce and Brothers bought out Fisher and Harris in 1869, and continued to use the same mould. It is true, that this mould was only one in a block or frame of fifteen moulds, and eleven other frames were used in connection with this frame, without any such types in them, in making up boxes of tobacco. But in view of the fact that the mould having the types continued to

be used for many years, and that the word " Blackberry " was invariably printed on the tobacco, the process, though somewhat imperfectly applied, cannot be regarded as an abandoned experiment. The impression being made in the mould whilst the tobacco was moist might not remain as clearly defined as if it were made in the finishing process (when a further finishing process was used); but it continued to appear quite distinctly and remained as a permanent mark on the tobacco, as is seen in the specimen which has been preserved, and made an exhibit in the cause.

There is also evidence in the case of a zinc plate with raised characters, forming the name of the maker, one " E. F. Smith," being used by him in the summer of 1875, both in the moulding and in the finishing process, for the purpose of imprinting the name upon plug tobacco which he was then manufacturing in a small way in Evening Shade, a village in Arkansas. The plate was used in substantially the same way as that described in the patent of the complainants; and if the evidence is to be believed, the fact of prior anticipation is clearly established. The circuit judge, who decided this case in the court below, after a careful examination of the testimony on the subject, came to the conclusion that it was to be believed, and based his decision principally upon it. We have come to the same conclusion. It is true that a vigorous effort was made to break down the testimony of the principal witnesses, Smith and his foreman, Lee; and it was pretty clearly shown that much could be affirmed derogatory to their general characters. But the complainants failed to show anything substantially affecting their characters for truth and veracity, or that they were not to be believed under oath. Besides, the manner in which their testimony was given, and in which they bore the test of a somewhat rigorous cross-examination, tends to give confidence in the truth of their statements. And they are not without a good deal of corroboration. One of the alleged identical plates was produced; and the jeweller who made it, being called as a witness, recognized it, and said that he thought he made two of them; and he corroborated the date; and testified that Smith showed him some tobacco which he

said had been marked with the plate, and which appeared to have been so marked. Metcalf, one of the complainants' witnesses, also states, on cross-examination, that he had seen one or two plugs with Smith's name impressed on it, which he (Smith) represented to be his work, and that this was in 1875 or 1876. Huddleston, the sheriff of the county, testified that he had purchased plug tobacco from Smith, about that time, with Smith's name impressed upon it. The fact that the process was not used to a great extent, and not brought into more public notice, is explained by the further facts that Smith's manufacture was not of large extent, and that his establishment was closed by the Internal Revenue officers in the spring of 1876, in consequence of sales charged to have been made by him without the proper stamp.

We think that the alleged process of Smith is substantiated by the evidence, and that the decision of the case might be rested on his anticipation of the complainants' invention.

But it is not necessary to rely on this branch of the case alone. Leaving the evidence in relation to Smith's process out of the case, the state of the art at the time of Miller and Worley's application for a patent, as already pointed out, was such as to leave no ground for its issue. What more did they do, at most, than to apply a process of stamping tobacco, which was already well known, to the same tobacco at a later stage in the process of manufacture? Did this entitle them to a patent? According to the ruling of this court in *Pennsylvania Railroad Co.* v. *Locomotive Truck Co.*, 110 U. S. 490, this question must be answered in the negative. That case is precisely in point. The contrivance for allowing the cars, in rounding a curve, to have a lateral motion so as to counteract the tendency to depart from the track, had been applied to passenger cars, but not to locomotives. Smith, the patentee in that case, obtained a patent for applying that same device to locomotives. We decided the patent to be void, and held, in general terms, that " the application of an old process or machine to a similar or analogous subject, with no change in the manner of applying it, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of

result has not before been contemplated." We adhere to that ruling, and the principle involved in it is fatal to the patent now under consideration.

The decree of the Circuit Court is

*Affirmed.*