## GRANT v. WALTER.

### (Circuit Court, S. D. New York. May 4, 1889.)

1. PATENTS FOR INVENTIONS—SILK SKEINS FOR DYEING.

Letters patent No. 267,192, issued to complainant November 7, 1882, for "improvements in the art of reeling and winding silk and other thread," contain two claims: (1) "A skein of silk or other thread wound upon a reel diagonally from side to side, in the manner described, and laced back and forth across its width to preserve its form, substantially," etc.; (2) "the combination of the lacing with a wide skein of silk or other thread in which the strands are diagonally crossed, substantially," etc. The form of skein described in the patent was well known; but the method of dyeing and winding silk by the use of that form of skein had never been thought of until complainant employed it and described it in this patent, stating that the lacing "constitutes the chief point of my invention, and is what preserves the skein in its shape, and prevents its becoming entangled in the process of dyeing." *Held,* that the claims fail to cover the invention, and the patent is void.

2. SAME—DISCLAIMER.

It would be of no avail to disclaim the skein except for use in the process of dyeing, as that would not change the patent into one for the process, which is what the invention consists of.

In Equity.

Bill for infringement of patent, filed by James M. Grant against Richard Walter.

*Wm. Edgar Simonds,* for complainant.

*Henry Grasse,* for defendant.

WHEELER, J. This suit is brought upon letters patent No. 267,192, dated November 7, 1882, and granted to the orator for what are called in the patent "improvements in the art of reeling and winding silk and other thread," and which are stated there to relate "to a novel manner of winding silk or other thread upon the reels in a reeling-machine, preparatory to its being dyed," and to consist "in winding the silk or other thread upon the reel in the form of a wide band, in which the thread crosses from side to side as it is wound, somewhat in the manner now employed, but so arranged as not to form single skeins by passing one layer over the other. I prefer to have the thread cross in five-sixths of one revolution of the reel, although other proportions will answer. When

the required quantity has been wound, I lace the skein or band, before it is removed from the reel, in one or more places, generally on opposite sides of the reel, so as to divide it into a number of parts and hold it in its flat or band-like condition. This lacing constitutes the chief point of my invention, and is what preserves the skein in its shape and prevents its becoming entangled in the process of dyeing. After lacing, the skein is removed from the reel, and passes into the hands of the dyer. After winding in the manner above described the skein is so laid, one thread crossing the other, that its texture is more open, even, than the small skeins wound in the ordinary manner, and, although much larger, the dye easily penetrates to every part, and insures a uniform color. The several threads cannot become matted together, as with the ordinary skein, wound in the customary manner." The utility of the invention is set forth as that by means of it "a great saving is made in the expense of manufacture, the waste of silk is greatly reduced, and less skill is required in the winding after the dyeing, thereby dispensing with the high-priced, skilled operatives now employed upon this work." There are two claims:

"(1) A skein of silk or other thread wound upon a reel diagonally from side to side, in the manner described, and laced back and forth across its width to preserve its form, substantially as set forth.

"(2) The combination of the lacing with a wide skein of silk or other thread in which the strands are diagonally crossed, substantially as described."

According to the evidence, silk is formed by the silk-worm into cocoons, which are soaked in a suitable bath, and the filaments of silk are unwound from the cocoons, and wound into skeins on reels or swifts. In this shape it forms the raw silk of commerce, and is imported into America in large quantities. In manufacture the raw silk is ungummed; dried to a sufficient degree; and then, in skein-form, put on swifts, from which it is wound onto spools or bobbins; then the silk, according to the use to which it is to be put, is further doubled, in which operation it goes from spool to spool; is twisted, in which operation it goes again from spool to spool; and, when of sufficient size as to number of threads and of condition as to twisting, is reeled from the spool or bobbin into skein form. In this skein form it is dyed. The term "winding" means the changing of the silk from the skein form to its form on a bobbin or spool, and by "reeling" is meant the putting of the silk into the skein form. Before the orator's invention the skeins for dyeing were made up of several small skeins of threads wound without being crossed. These smaller skeins were difficult to separate and straighten after the operation, and skilled operatives were required. The orator's method produces a form of skein in which a larger quantity of silk can be reeled than by the old method. It requires less skill on the part of the operative to reel the silk, and a large part of the waste, inseparable from the old method, is prevented. There appears to be a saving of about 40 per cent. in cost over that by the other method. After the skein has been dyed, it can be wound without parting, thus dispensing with the work of parting that required considerable skill

and experience in the other method of manufacture. The evidence also abundantly shows that raw silk was reeled diagonally into broad skeins, and laced across for convenience in handling and transportation, before the orator's invention, but more closely, and not for the purpose of handling in the operation of dyeing. The great advantage of that form of skein for that purpose does not appear to have been known before. What the orator invented was the method of dyeing and winding silk by the use of that form of skein in the operation, and not the skein itself. That, being known before, was not patentable as such, even for a new use. *Railroad Co.* v. *Truck Co.*, 110 U. S. 490, 4 Sup. Ct. Rep. 220; *Miller* v. *Foree*, 116 U. S. 22, 6 Sup. Ct. Rep. 204. The process of using it in dyeing and winding was probably patentable. *Cochrane* v. *Deener*, 94 U. S. 780; *The Telephone Cases*, 126 U. S. 1, 8 Sup. Ct. Rep. 778. He appears to have a patent for what he did not invent, and not to have one for what he did invent. The looseness in winding and difference in size of the skeins made use of in the practice of the orator's invention are somewhat relied upon to uphold the patent for the skein; but they are not mentioned in the claims, and are no more covered by them than the process is; and, if they were, these differences in degree merely would not seem to be patentable. *Estey* v. *Burdett*, 109 U. S. 633, 3 Sup. Ct. Rep. 531. The specification makes many references to the use of the skein in the process of dyeing, and this has been urged as forcibly as it could be as a ground for upholding the patent for such a skein in use in that process. But the claims are for the skein merely as a product, and they rigidly control. *Burr* v. *Duryee*, 1 Wall. 531; *James* v. *Campbell*, 104 U. S. 356. The orator offers to disclaim the skein except for use in the process of dyeing, but that would not change the patent into one for the process. The patent for the skein would still be void, and the process of using it be still free from the patent. This is not like Cummings' patent for a set of artificial teeth, made in a defined manner, which was held to cover as well the process as the product. *Smith* v. *Vulcanite Co.*, 93 U. S. 486. The skein of this patent is not the product, and is not new. The product is the wound skein of dyed silk. This skein is merely put to a new use in the process of producing that; and when that is produced it is not different from the wound skein of dyed silk produced in the former mode, and would not seem to be patentable. *MacKay* v. *Jackman*, 12 Fed. Rep. 615. The invention of the orator is so meritorious and valuable that the conclusion that the patent does not and cannot be made to cover it has been reached with reluctance, and only after much consideration of all the grounds urged in favor of an opposite result. Let there be a decree dismissing the bill of complaint, with costs.