RAINEAR v. WESTERN TUBE CO.

(Circuit Court of Appeals, Third Circuit. February 6, 1908.)

No. 47.

1. PATENTS—INVENTION AND INFRINGEMENT—PIPE COUPLING.

The Hewlett patent, No. 640,197, for a pipe coupling, which consists essentially in the combination in a union coupling of ordinary construction of a brass spud and an iron nut and tailpiece, whereby there is brass to iron at the screw joint and at the sealing joint at the opposing ends of tailpiece and spud, thereby avoiding the rusting of the joint and securing a closer sealing joint, was not anticipated and discloses invention. Also *held* infringed.

2. WORDS AND PHRASES—"UNION."

A "union" is a coupling nut, provided at one end with an internal shoulder, adapted to engage a pipe, called a spud, sleeved through the nut

and adapted to engage such internal, by its external, shoulder; the other end of the nut being internally threaded and adapted, as it is screwed up, to draw in and seat the beveled end of the spud.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 156 Fed. 49.

Philip C. Dyrenforth, for appellant.

Bakewell & Byrnes and Charles MacVeagh, for appellee.

Before DALLAS and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. In the court below, the Western Tube Company, the owner of patent No. 640,197 to Alfred M. Hewlett for a pipe coupling brought suit for infringement thereof against Charles W. Rainear. That court decreed the patent valid and the three claims thereof infringed. From such decree Rainear appealed. This patent concerns what are called "unions" or pipe coupling, which in steam and water practice are liable to be often opened. A union is a coupling nut, provided at one end with an internal shoulder, adapted to engage a pipe, called a spud, sleeved through the nut and adapted to engage such internal, by its external, shoulder. The other end of the nut is internally threaded and adapted, as such nut is screwed up, to draw in and seat the beveled end of the spud. These three pieces—nut, tailpiece and spud—were ordinarily made of the same metal; that is, all iron or all brass. The latter metal was expensive, and the seating faces thereof had to be carefully ground. When the union was all iron the screw threads of the joint rusted and the union was disconnected with difficulty. When subsequently recoupled, the sealing faces, being rustpitted, were likely to leak. Leaking was prevented by inserting gaskets, but these gathered rust and decayed. Being articles of very common use, unions must be inexpensive, and the cost of all brass was prohibitive for such common use. The object of this patentee was to make a union which could be uncoupled without injury, which would not rust and at the same time be inexpensive. In solving that problem, he, in common with the plumber's art, was aware that brass and iron in contact will not rust; and that iron being harder than brass, sealing surfaces of those metals grind and seal into each other. In the face of these facts long and well known to the plumber's art, it is remarkable that no one took advantage of them to make a brass-to-iron contact in the simple and effective way Hewlett did to produce a union for common plumbing use. There are instances where an iron nut was used to screw onto brass whereby a rustless joint was secured; there are instances where sealing faces of brass and iron were used, but even these uses and others we might add of even greater suggestiveness, led no one prior to Hewlett to utilize these known facts to devise a common, cheap, and rustless plumber's union which could be repeatedly uncoupled and recoupled without injury. Hewlett's inventive act consisted in so placing in novel combination one brass and two iron pieces that he was able to secure as rustless a connection as where all brass

was used, and without grinding as tight a seal as where a gasket was inserted. His device, the brass in yellow and the iron in black, is shown in the accompanying cut:

Brass.
Iron.

The two members, 3 (iron) and 10 (brass), are internally threaded to engage the pipe to be connected. The pipes are drawn together by the nut 7 (iron) screwed to 10, whereby a rustless joint is secured. The advance of 10 brings a soft-faced brass edge against the hard-faced iron edge of part 3, and this diversity of metal makes both a rustless and a tight, gasketless seal. The merits of such a device are obvious. The joined ends require no accurate grinding as in all brass joints; the differing hardness of these metals make them self-sealing; while the fewness of parts, and but one of them brass, makes a union in which increased efficiency is had at lessened cost. It brought the desirable features of the expensive, all-brass union into common service. The device went into wide and rapid use. We are of opinion the court below properly held the device was novel and patentable.

So, also, was it right in holding respondent's union, shown in the accompanying cut, was an infringement.

While literally composed of five members, two of them, viz., 7 and 3, are the identical 7 and 3 of Hewlett's device; and the remaining three, viz., 10, 10a, and the pin which makes 10 and 10a operatively integral, are either mechanical equivalents or claim-evading substitutions for the brass number 10 of Hewlett's device. The part 10a being integrally fastened to part 10 by the pin, is but an extension of that part, and, being without the zone of material functional service in the patented device, its form or constituents are matters of indifference. So regarding the two devices, the decree of the court below should be and is affirmed.