**IRVING et al. v. KERLOW STEEL FLOORING CO.**

District Court, D. New Jersey.
Dec. 29, 1938.

Bartlett, Eyre, Scott & Keel, of New York City (Thomas G. Haight, of Jersey City, N. J., and Richard Eyre and A. Parker-Smith, both of New York City, of counsel), for plaintiffs.

Milton, McNulty & Augelli, of Jersey City, N. J. (John C. Kerr and George F. Des Marais, both of New York City, of counsel), for defendant.

CLARK, District Judge.

The usual search for that needle in the haystack of patent jurisprudence, the spark of genius in the improvement. The plaintiff company describes itself as the oldest and largest manufacturer of open metallic flooring. This modest assertion finds confirmation in the file of alleged anticipating patents. All but one of these patents is owned by the corporate plaintiff and of these two are the brain children of this corporation's president, Mr. Irving. The defendant is a company also engaged in the steel flooring business. So far, at least, it appears to operate without benefit of patents and by its defence here insists upon its right to do so without interference from those or rather that of the plaintiff.

The plaintiff's patent (Irving, No. 1,-991,154 application May 10, 1933—granted February 12, 1935) purports the solution of a problem in highway bridge flooring. That problem is described in two articles or excerpts therefrom introduced in evidence as Exhibit P. 14 and Exhibit P. 33 and entitled, respectively, Economics of Decks and Floor Systems from Economics of Bridgework (Waddell, 1921) and Development Tests on a Light Floor for Bridges (Engineering News-Record, Moisseiff, 1930). Even without these articles

we might have guessed the objective. It is, of course, the reconciliation of the lightness essential in bridges (particularly long span or bascule) with the "requirements of modern vehicular traffic", principal among the latter being strength, permanence and friction. Whether we could have guessed it or not, Mr. Irving, an expert in the act of decking, knew it and set himself and his company to its unravelment. His final step, the patent in suit, and its successful construction and use are enthusiastically portrayed in an article by one of his customers, J. A. Dunford, Exhibit P. 31, Irving Decking Lightweight Bridge Floor Formed by Open-mesh Flooring. The latter's enthusiasm was durable enough to bring him from Seattle to Newark to testify at some length, Record pp. 162–209.

It is common ground, as our English brethren say, that reticulated or egg crate (who but a patent solicitor would have employed the Latin rather than the Anglo-Saxon derivative) gratings for floors, streets and sidewalks and for the reinforcing of concrete on roadways and bridges are both protected by numerous patents and have been in extensive use. So the defendant's prior art patent, Exhibit D. 4 shows two patents for floor, street or sidewalk gratings (Keller, No. 1,045,795 and Price, No. 1,609,126) and four patents for gratings as reinforcement on concrete roadway bridges (Irving, No. 1,526,069 and No. 1,733,966, Van Hoffen, No. 1,629,134 and Voskamp, No. 1,666,157 and No. 1,-733,923). So also defendant offers publication Exhibit D. 5 describing gratings for floors, streets and sidewalks manufactured both by the plaintiff and the defendant and by the Mitchell-Tappen Company. The patents and advertisements for flooring expatiate upon the qualities of lightness, cleanliness, and slip-proofness which are put forward as the merits of the patent in the case at bar.

The exact significance of, first, the 134th Street, New York City viaduct prior use, and second, the prior foreign patent to Schultz (a German with an English patent under the International Convention, No. 2046, 1912), is not common ground. As to the viaduct the point is made that the indicated gratings are only rather large inserts in an otherwise solid roadway and that their mesh is too small to permit of tire gripping. The Schultz patent is said to describe and therefore to be limited to

light bridges suitable for foot passengers. We pass over the patriotic but certainly illogical view taken by some courts of foreign patents. Economy Appliance Co. et al. v. Fitzgerald Mfg. Co., D.C., 35 F.2d 756; Art Metal Works, Inc. v. Abraham Straus, Inc., D.C., 52 F.2d 951; Art Metal Works, Inc. v. Abraham & Straus, Inc., 2 Cir., 61 F.2d 122, certiorari denied 287 U.S. 657, 53 S.Ct. 119, 77 L.Ed. 567; Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685. Perhaps also the use in line 25 of the Schultz patent of the phrase "the caulks of horse shoes" may refer to the passage of the owners of the shoes over street gratings; although that too seems illogical. The viaduct and the structure of the patent in suit do indicate the differences mentioned and so we leave open direct anticipation by prior use (134th Street) or paper patent (Schultz).

There remains then the appraisal of the improvement. If we had only the previous use of grating as reinforcement for the concrete flooring of bridges, we should feel that the abandonment of the filling indicated an inventive thought. The use of the reinforcement as the principal seems to us not likely to occur to the ordinary mechanic. The fact is, however, that a bridge seems to be the only place where similarly constructed gratings have not been both used and patented to function for the passage of both man and beast (or the latter's modern equivalent, the automobile). Their current application to the latter tickets the appraisal we have spoken of with the principle and phrase of the patent law analogous use.

The adjective is derived from the Greek (ana, up, and logos, ratio) and as is to be expected from its origins means bearing some resemblance. Within the scope of the indefinite some, there must be a more precise standard. As we are in the patent law and not the law of negligence, that standard is that of the ordinary mechanic. So the resemblance must be perceptible to that mythical worthy (Warren Webster & Co. v. C. A. Dunham Co., 8 Cir., 181 F. 836; Aeolian Co. v. Wanamaker, 2 Cir., 234 F. 90) and being mythical, the trier of the fact (General Electric Co. v. City of Dunkirk et al., 2 Cir., 211 F. 657; Herman v. Youngstown Car Mfg. Co., 6 Cir., 191 F. 579), the patent judge, must determine what he would have perceived had he been less mythical. In our view the employment by the cases of such words as recondite and remote (Ford Motor Co. v. Parks & Bohne, Inc., 8 Cir., 21 F.2d 943; Berry v. Robertson, D.C., 40 F.2d 915) on the one hand and similar and substantial (Miller v. Foree, 116 U.S. 22, 6 S.Ct. 204, 29 L.Ed. 552; F. E. Myers & Bro. v. Fairbanks, Morse & Co., 7 Cir., 194 F. 971; In re Lavinthal, Cust. & Pat.App., 47 F. 2d 955; Friend et al. v. Burnham & Morrill Co., 1 Cir., 55 F.2d 150; Caton Printing Co. v. Daniels Mfg. Co., 7 Cir., 72 F.2d 993) on the other and their reference to different industries (Aiken v. National Tube Co., C.C., 157 F. 691) or branches (Berry v. Robertson, supra) of the same industry are only expressions of this same thought (and for collection of cases cf. West Digest System, Patents, �köm27, 40 and 56).

That perforated parts of roadways have qualities superior to those of their more solid rivals is well-known. Those qualities as we have said were stated in prior art patents and prior publications by advertising to be lightness, cleanliness and slip-proofness. To extend these parts to cover the entire roadway and to use them on bridges where lightness was particularly essential and self-cleansing particularly easy seems to us well within the capacity of our mechanical friend. The desirability of such extension only became apparent upon the subjection of bridges to increased motor traffic. The fulfilment followed quickly upon the desire.

The bill will be dismissed.