223 F.2d 719
 MODERN ART PRINTING COMPANY, a Partnership, Composed of Joseph Bardash and Percy Rimes, Plaintiffs-Appellees,
v.
Arthur N. SKEELS and Alice M. Skeels, Individually and as Co-Partners, Doing Business Under the Firm Name and Style of Art Roll Leaf Stamping Company, Defendants-Appellants.
 No. 11555.
 United States Court of Appeals Third Circuit.
 Argued May 19, 1955.
 Decided June 16, 1955.
 
 Harry Cohen, New York City (Harry B. Rook, Newark, N. J., Levisohn, Niner & Cohen, Edwin Levisohn, Reuben Spencer, New York City, on the brief), for plaintiffs-appellees.
 Floyd H. Crews, New York City (Harry Sommers, Newark, N. J., Darby & Darby, New York City, on the brief), for defendants-appellants.
 Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Plaintiffs successfully sued in the district court for infringement of United States patent 2,491,947 applied for by plaintiff Bardash June 11, 1948, issued December 20, 1949, and assigned by Bardash to the plaintiff partnership. Defendants, the appellants here, asserted that this patent was invalid and also denied that their two accused devices infringed.
 
 
 2
 The Bardash invention relates to the method of printing indicia upon a collapsible bottle that is made from a flexible material, such as a plastic, and the jig or fixture by means of which a printing machine may be converted to practice the method. Its practical use is to hot stamp flexible molded bottles made from the plastic polyethylene. The particular type of bottle is used for packaging various toilet and medicinal products.
 
 
 3
 The fixture for the practice of the invention consists of a stationary supporting plate mounted in an undescribed fashion on the printing machine. The bottle is placed on this. Then a collapsing plate cut out at the center is brought down on the bottle, flattening it. Immediately thereafter the stamping die is inserted through the aperture of the pressure plate on the flattened surface of the bottle printing whatever happens to be the particular material it bears. Adjustable holding fingers are mounted outside of the supporting plate in order to properly fix the position of the bottle during the operation. It is imperative to the patent that only an intermediate length of the tubular wall of a container be flattened or collapsed so as to prevent deformation of the closed bottom wall and open neck of the container. In practice the container, a polyethylene bottle, is positioned on a supporting plate which allows the neck and bottom portions to be pushed away from the die. As the collapsing plate descends it assists in the non-interference by flattening the intermediate side wall and prevents the heated die from engaging and burning the neck and bottom portions.
 
 
 4
 The essential elements of the apparatus are first, the printing machine to which the jig or fixture is to be fastened. The means by which that is to be accomplished according to the patent language "* * * will occur to those skilled in the art upon a description of my invention." (Emphasis supplied.) Then comes the supporting plate which is here attached to the patent fixture but which is the base plate of the ordinary printing machine upon which any article to be printed must rest. The third important part of the device is the apertured pressure plate. It is through that center aperture that the usual printing machine die descends and stamps the article on the bed plate. The spring fingers, springs and members which carry the fingers come under claim 5 of the patent which is not included in the suit. The overhang of the top and bottom of the bottle stressed by appellees as a valuable feature of the patent did not come into being with it. As appellees' witness Boyd explained that sort of operation had been done "If they wanted a specific design of a given size in the center or on a portion of a larger area outside of the embossed area, the area to be embossed; it would hang over."
 
 
 5
 So it is true, as contended by appellants, that the sole physical feature in appellees' device which does not appear as part of the common printing press is the apertured pressure plate. And that exact kind of plate was patented by O. C. Correll on December 17, 1929, United States Patent 1,740,285.[1] There is not the faintest indication from appellees' argument that this is not the fact. While there is no mention of it in the district court opinion it is significant that Correll is there rejected as anticipating the suit patent because it "* * * teaches the use of a hand stamping device utilizing a heated die and foil for stamping flat articles" and "does not describe a method for printing squeeze bottles, such as is set forth in the patent in suit." The hand operation as distinguished from a mechanical proceeding is a distinction without a difference[2] especially so in this instance because the Bardash patent fails to reveal any linkage for power or power itself. The assertion that Correll fails to claim it can be used to hot stamp collapsible bottles does not seem too startling in view of the fact that on the date of the Correll patent there was no such product as a flexible polyethylene bottle. That sort of container did not come into existence until 1947 and according to trial evidence relied on by appellees the Correll device was discontinued in 1929, which was the same year the Correll patent was allowed. Even so at the trial in the district court a polyethylene bottle was hot stamped with Correll's machine. Appellees point out that the apparatus at that demonstration did not completely flatten the bottle and consequently the print smeared. One need not be an expert to realize that if the complete flattening of the bottle is vital for distinct hot stamping then any needed additional strength to the spring specified in the Correll device is all that is required. Given a strong enough spring the bottle will be completly flattened by the Correll plate prior to being stamped by the hot die coming down through the center opening.[3] Bardash obtains the same result with his apertured pressure plate but does not disclose the source of the pressure.
 
 
 6
 Appellees point to the absence of a supporting plate in Correll but what is there plainly indicated is the use of any convenient backing surface. And if squeeze bottles were to be stamped by the Correll machine it would seem obvious that either the supporting surface or the pressure plate would have to be made smaller than the bottle so that overhang of the hard top and bottom would be permitted. It is impossible to avoid the conclusion that the Correll invention or its like was readily usable for hot stamping plastic bottles and that it clearly anticipated the Bardash patent.
 
 
 7
 Appellees stress the importance of what they insist is their original idea of flattening the container prior to printing. But the idea of collapsing an article to be printed upon was anticipated by the Burndy machine which was produced during the war years of 1941 to 1943. It was used to hot stamp flexible plastic tubing. Cut pieces of the tubing were slipped over electrical wires for identification of the circuit. The product was chiefly employed in aircraft.
 
 
 8
 The Burndy contrivance consisted of the conventional printing machine plus a metallic guide member. The tubing was fed through the guide member which partially collapsed it. Then it was further collapsed and stamped by the die coming down through an aperture in the guide member. With the possible exception of a smaller circumference the flexible plastic tubing was quite similar in its general aspects to the tubularshaped polyethylene bottles of today. While a larger guide member appears to be the only substantial change required for adaptation, the trial court was not persuaded that the Burndy collapsing device could have been effectively used to imprint collapsible bottles. The court also found that the Burndy method did not totally collapse the article to be imprinted prior to printing. This the court states is a distinctive feature of the Bardash method and machine and, according to evidence convincing to the court, is necessary to obtain a clear print. It is not disputed that the Burndy machine printed clearly and successfully. And it printed without the use of a pressure plate by the simple operation of stamping the plastic with the hot die. This is the method of appellants' first accused device except that there is no initial partial collapse as occurs in Burndy because of the latter's guiding member. At best Bardash merely combines the apertured pressure plate of Correll with the idea previously conceived by Burndy of collapsing a flexible plastic tubing.
 
 
 9
 It is evident that the Bardash apparatus and method do not display the minimal substantial innovation which could be fairly called invention and justify a patent monopoly. Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. "This patentee has added nothing to the total stock of knowledge * *." Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 1950, 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.[4] The Bardash patent is essentially the application of the old hot stamping process to a new product i. e. squeeze bottles. It cannot be sustained.
 
 
 10
 In this posture of the case, we do not reach the charges of infringement. Cover v. Schwartz, 2 Cir., 1942, 133 F.2d 541, 545, certiorari denied, 1943, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703. And see Sinclair & Carroll Co. v. Interchemical Corp., supra, 325 U.S. at page 330, 65 S.Ct. at page 1145.
 
 
 11
 The writ of injunction dated October 25, 1954 will be dissolved. The decree of the district court will be reversed.
 
 
 
 Notes:
 
 
 [1]
 One of the claims of the Correll patent for example states:
 "(3). In a stamping device, a frame including supporting rods, a base plate having means engageable with said rods to attach said plate to the frame, said plate provided with an aperture over which is adapted to be placed a ribbon coated with a coloring substance, and a die movable into engagement with said ribbon and operable by pressure to transfer said coloring substance to a surface to be printed upon."
 Compare the more involved language of Claim 2 of the Bardash patent:
 "(2). The method of printing * * * comprising the steps of placing the article in position in which said wall is disposed against backing, pressing an apertured member against an intermediate length only of said wall and thereby moving said wall length inwardly of the article toward said backing to a definite position in which the latter prevents further inward movement of said wall length, printing on said wall length exposed in the aperture of said member, while said wall length is in said definite position, and releasing said apertured member from said walls to allow the latter to regain its normal tubular shape."
 
 
 [2]
 General Electric Co. v. Eisler, 3 Cir., 1927, 20 F.2d 33; Murray Rubber Co. v. De Laski & Thropp Circular Woven Tire Co., 3 Cir., 1927, 21 F.2d 822
 
 
 [3]
 Appellants' expert Kelley never said as suggested that squeeze bottles could not be hot stamped by the Correll machine. He did frankly state that there was no reference to stamping squeeze bottles in the Correll patent. As is conceded squeeze bottles were unknown at that time
 
 
 [4]
 It is most interesting to note that in a concurring opinion in the Great Atlantic & Pacific decision Justice Douglas in order to "show the pressure to extend monopoly to the simplest of devices" collected what he termed to be a "list of incredible patents which the Patent Office has spawned" and which the Supreme Court had in the past been obliged to strike down. On that list appears the following: "Miller v. Force, 116 U.S. 22, 6 S.Ct. 204, 29 L.Ed. 552: A stamp for impressing initials in the side of a plug of tobacco." That old Miller v. Foree case, decided by the Supreme Court back in 1885, is somewhat analogous to the instant litigation. There "The improvement, as declared in the specification, consists in pressing in the side of the plug during the process of manufacture, letters or marks so as to be ineffaceable." The Supreme Court said in 116 U.S. at pages 24 and 27, 6 S.Ct. at page 205:
 "Impressions of letters, figures, and other marks have for a long period been made by compression upon plastic substances, such as cakes of soap and chocolate, bars of lead, balls of butter, sealing wax, the leather covers of books, etc. It was not strange, therefore, that the same process for producing a like result should have been applied to tobacco when moulded and compressed into solid plugs of definite form.
 * * * * *
 "What more did they do, at most, than to apply a process of stamping tobacco, which was already well known, to the same tobacco at a later stage in the process of manufacture? Did this entitle them to a patent? According to the ruling of this court in Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co., 110 U.S. 490, 4 S.Ct. 220 [28 L.Ed. 222], this question must be answered in the negative. That case is precisely in point. The contrivance for allowing the cars, in rounding a curve, to have a latteral motion so as to counteract the tendency to depart from the track, had been applied to passenger cars, but not to locomotives. Smith, the patentee in that case, obtained a patent for applying that same device to locomotives. We decided the patent to be void, and held, in general terms, that `the application of an old process or machine to a similar or analogous subject, with no change in the manner of applying it, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated.' We adhere to that ruling, and the principle involved in it is fatal to the patent now under consideration."