**WHITE MACHINE COMPANY, Inc.,**
Plaintiff,

v.

**BON TON CLEANERS & DYERS and
J. J. Friedman, Inc., Defendants.**

Civ. A. No. 98-60.

United States District Court
D. New Jersey.

Jan. 26, 1961.

---

Richards & Cifelli, Newark, N. J., for plaintiff, by Thomas Cifelli, Jr., Newark, N. J.

Harry B. Rook, Newark, N. J., for defendant, Harry Cohen, and Stanley I. Rosen, New York City, of counsel.

WORTENDYKE, District Judge.

This action is for the statutory relief provided in 35 U.S.C. §§ 281, 283 and 284, for the alleged infringement of United States Patent No. 2,899,072, issued August 11, 1959 to Morton A. Weiss, upon application filed July 3, 1957. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1338(a). Plaintiff is owner of the patent. Defendant is the user of the allegedly infringing device, which was concededly manufactured and sold to defendant by Railex Corporation. Defendant denies infringement, and pleads invalidity of the patent and its misuse by the plaintiff.

The patent specifications describe the invention as relating to "improvements in conveyor racks for storing articles

\* \* subject to quick and easy idenfication and selection when availability nd removal thereof is required; \* \* \* hore particularly to an improved conveyr rack for use in call offices of dry cleaning \* \* \* establishments \* \* \*." The stated objects of the invention are: 1) "to provide an improved power drivn, circulatory storage rack for call office use which is provided with an endless rack rail upon which cleaned garments, ready for delivery to the customrs, can be suspended in the consecutive rder of their identifying numbers; said ack rail being adapted to be circulated, vhereby to move the stored garments round the rack to the call office attendnt, until the desired garment is presented for selection, removal and delivery o the customer." (2) "to provide a storge rack equipped with a power driven irculatory rack rail to receive suspended garments, said rack rail being uninterruptedly continuous, and preferably comprising successive sections in novel apped relation one to another, so that garments can be manually moved upon nd along the same, without obstruction, \* \* \*."

Plaintiff relies only upon claims 7 through 10 of the patent. Claim 7 reads as follows (emphasis supplied):

"A conveyor rack for storing material subject to selection and removal therefrom comprising an endless track, a rack rail structure to carry stored material, said rack rail structure comprising a series of frame members pivotally interlinked in end to end relation to provide a continuous articulated assembly thereof, means to suspend said frame members from the track for movement around the latter, and *a continuous rack rail means adapted to permit unobstructed adjustable movement thereover of stored material carried thereby,* and hanger means to suspend said rack rail means from the interlinked frame members."

The parts comprising the combination disclosed in the specific embodiment of the claimed invention are stated to be:

(1) the rack rail components, consisting of a series of frame members or links, pivotally connected together in end to end relation and providing an endless or continuous interlinked assembly thereof;

(2) the rack rail section carried by and suspended from each frame member or link;

(3) spaced hanger members depending from the frame members or links and suspending the rack rail sections;

(4) the inwardly offset portions of the hanger members;

(5) the outwardly offset, upturned portions of the hanger members, affixed to and supporting the rack rail sections.

United States Patent No. 2,778,504, issued January 22, 1957 upon application filed June 30, 1954, cited by the Examiner in the prosecution of the patent in suit, disclosed a conveyor similar to the slotted frame member type, exemplified in plaintiff's "Stor-U-Veyor" and in Railex Standard Model PB. Plaintiff here recognizes that the validity of the patent in suit depends upon whether its conceded modification of the slotted type of conveyor amounts to invention. Defendant phrases the confronting question as "whether it is patentable invention to suspend a continuous rack rail means which is old in itself from a conveyor which is admittedly old, or whether the resulting combination is a combination (sic) of old elements each of which performs the same function which it performed when used separately."

The patent in suit is presumed valid, 35 U.S.C. § 282. The burden of proving invalidity rests upon the defendant; that of proving infringement, upon the plaintiff. Defendant's attacks upon the claims relied upon will appear from the following asserted bases of invalidity.

**810**

Claims 7 to 10 were made more than a year after the manufacture and sale of the accused device. Defendant contends that they are barred by 35 U.S.C. § 102(b). That section disentitles a person to a patent if "the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *." While the application for the patent in suit was filed July 3, 1957, only claims 1 through 6 of the patent were originally set forth therein. Claims 7 through 10, here attacked, were presented August 1, 1958, but the accused Railex Model PC conveyor was first sold in September 1957, which was *less* than one year prior to the assertion of the claims upon which the plaintiff here relies. However, there was testimony that its flexible band feature was conceived of between July and November, 1956. The Patent Office rejected claims 7 and 8 (it is conceded that claims 9 and 10 depend from claim 8,), by letter dated March 27, 1959, upon the therein stated ground that the word "flexible," as applied to the "rack rail means," was a misdescription. Accordingly, claims 7 and 8 were amended on April 8, 1959 by the substitution of the word "articulate" for the word "flexible" therein. This amendment was effected *more* than one year after the accused Railex conveyor was on the market. This amendment precluded the language of the claims from being read on the accused device because the rack rail in the latter, while "flexible" could not be described as "articulate." Although the word "articulate" (relating to the rack rail member) was later deleted from claims 7 and 8, thereby causing them to read as at present, that deletion became effective well over a year after the accused device had entered the public domain. It is plaintiff's contention, however, that the critical feature of the subject matter of claims 7 through 10 of the patent in suit was adequately disclosed by the claims in the application as originally filed, i. e., the so-called "continuous slick rail" feature, "adapted to permit unobstructed adjustable movement thereover of stored material carried thereby." This feature, or function, plaintiff considers to be the "nub" of its invention. Defendant, on the other hand, points to the "omission from the claims in suit of the rack rail sections with their adjoining chamfered ends in overlapping relation" as a complete departure from the alleged invention as described and claimed when the application was filed. The preliminary question for decision, therefore, is whether the claims in the application as filed define the invention, if any, disclosed in the added claims in suit. A claim which does not define the invention cannot be aided by reading into it parts of the specifications or of other claims. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 1935, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005. It is also the rule that "the claims of a patent are always to be read or interpreted in the light of its specifications," Schriber-Schroth Co. v. Cleveland Trust Co., 1940, 311 U.S. 211, 217, 61 S.Ct. 235, 238, 85 L.Ed. 132, and "drawings may be referred to for illustration and may be used as an aid in interpreting the specification or claim," Permutit Co. v. Graver Corp., 1931, 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163. See National Development Co. v. Lawson-Porter Shoe Machinery Corp., 1 Cir., 1942, 129 F.2d 255, citing 2 Walker on Patents, Deller's Ed., §§ 261, 262. If, therefore, the claim, read in the light of the specifications and drawings, reasonably apprises those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the claim should not be held invalid for indefiniteness. Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 1958, 258 F.2d 124, certiorari denied 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112. A claim should be for the means of producing an effect instead of for the effect itself. A claim for the function of an invention, or for the effect as produced, is void. Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 1946, 157 F.2d 725, certiorari denied 329 U.S. 796, 67 S.Ct. 482, 91

L.Ed. 681. Plaintiff, however, points to the patent specifications which disclose "an endless rack rail upon which cleaned garments * * * can be suspended in the consecutive order of their identifying numbers; said rack rail being adapted to be circulated, whereby to move the stored garments around the rack to the call office attendant, * * *; said rack rail being uninterruptedly continuous, and preferably comprising successive sections in novel lapped relation one to another, so that garments can be manually moved upon and along the same, without obstruction, * * *."

■■ As originally filed, the application contained only six claims. On March 7, 1958 the Patent Office rejected claims 1 through 3 and 6. Claims 4 and 5 were not disapproved and were identical with those correspondingly numbered in the patent as issued. By amendment filed August 1, 1958, four claims were added by the applicant. The Examiner allowed claims 4, 5 and 6, as amended, but rejected claims 1, 2, 3, 7, 8, 9 and 10 as "vague and indefinite." Applicant submitted further amendments on April 1 and April 7, 1959, to meet the Examiner's criticisms, and notice of allowance of the application as amended was mailed by the Patent Office on June 8, 1959. Defendant argues that the characterization of the "rack rail means" as "flexible" in the amendment of August 1, 1958, and the substitution of "articulate" for "flexible" by the amendment of April 1, 1959, described a device which did not and could not be infringed by the device presently accused, which had come upon the market in September 1957. When the claims here in suit were added to the present application by the amendment of August 1, 1958, *less* than a year had elapsed since the Railex device had come upon the market. Therefore, Railex had acquired no right to thwart the ripening into a valid patent of the pending Weiss application. The vagueness and indefiniteness which then characterized claims 7 and 8 did not obscure the essential characteristics of the claimed invention, and the subsequent amendments of the language of those claims did not constitute new disclosures but related back to the filing date of the application, and served merely to clarify the description already substantially disclosed. The so-called Muncie Gear doctrine is not applicable to the facts in the present record. Muncie Gear Works v. Outboard Marine & Manufacturing Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171. Coats Loaders & Stackers, Inc. v. Henderson, 6 Cir., 1956, 233 F.2d 915, distinguishing Muncie Gear, held that the changes in the patent application effected by amendments during the course of the prosecution thereof did not constitute new matter, but were merely explanatory of the disclosure made by the original application. If the subject matter of the patent here in suit amounts to invention, its distinctive feature is found in the rack rail sections suspended beneath the frame members or links by spaced hangers and forming a continuous end to end assembly by means of the overlapping of the tapered or chamfered ends of each upon the rectilinear end of the adjoining section. The continuity of succession of the top sides of these sections provides a substantially smooth surface, free from shoulders or projections which might obstruct the manual sliding of garment hangers along the same. These features were clearly disclosed in the specifications and drawings of the application as filed. The subsequent amendments related back to the filing date of the application. No separate oath to these amendments was required by 35 U.S.C. § 115. Where, as here, "the material features were all described in the original application, * * * there was no necessity for the supplemental oath." American Safety Table Co. v. Schreiber, 2 Cir., 1959, 269 F.2d 255, 265, certiorari denied 1959, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185; United States Patent Office Rule of Practice 67, 35 U.S.C. Appendix. The entry of the accused device upon the market less than a year before the application was filed is not effective to create rights in the public inconsistent with that of the applicant

to secure an otherwise valid patent. 35 U.S.C. § 102(b) does not invalidate the claims in suit.

 The claims in suit are also criticized for offending the requirements of 35 U.S.C. § 112, because functional or indefinite in substance. The statute directs that the claim or claims specify the subject matter which the patent applicant "regards as his invention." Defendant contends that the claims relied upon fail to describe (1) means for moving the slick rail in a circulatory path including both rectilinear or straightaway portions, and curvilinear or bent portions, and (2) the chamfered and tapered ends on the overlapping bars comprising the slick rail. On the other hand, says defendant, the original claims (1 to 6) were limited to rack rail sections with chamfered overlapping ends providing a continuous slick rail permitting unobstructed movement over it of materials hung upon the rail. Defendant insists, therefore, upon the authority of Benz v. Celeste Fur Dyeing & Dressing Corp., 2 Cir., 1946, 156 F.2d 510, certiorari denied 1946, 329 U.S. 736, 67 S.Ct. 101, 91 L.Ed. 635, that the addition of claims 7 to 10, without inclusion therein of the critical features disclosed in the application as filed, especially after the "rights" of Railex had intervened, deprived those claims of validity. See Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; Philip A. Hunt Co. v. Mallinckrodt Chemical Works, 2 Cir., 1949, 177 F.2d 583. As previously stated, the claims of a patent must be interpreted in the light of the specifications. Schriber-Schroth Co. v. Cleveland Trust Co., supra; Bobertz v. General Motors Corp., 6 Cir., 1955, 228 F.2d 94. Because the amendment of the application in the present case, which added the claims in suit, must be considered as relating back to the date upon which the application was filed, and because the critical features of the alleged invention are disclosed in the specifications and drawings, the claims in suit are not invalid under 35 U.S.C. § 112.

Defendant asserts that the claims in suit lack invention because of anticipation in the prior art. In tracing the prior art, Morton A. Weiss, the inventor of the device covered by the patent in suit, testified that garments awaiting delivery to customers in retail dry cleaning establishments were stored by being hung upon pipe rack rails. In 1947 there was introduced a suspended "continuous rail" fitting for the storing of processed garments which permitted the manual movement of the garment hangers horizontally along the rail, without obstruction by the brackets suspending the rail. This equipment permitted the processed articles to be hung in numerical sequence along the suspended rail, but the amount of space required for its accommodation in the establishment where it was installed was an undesirable concomitant of the device. In 1955, plaintiff placed upon the market an electrically operated storage conveyor, by means of which cleaned garments suspended from vertical slots in the pivotally connected sections of a continuous linkage, moving along, parallel with, and in horizontal suspension from an endless curvilinear trolley rail, could be brought to a location selected by the attendant. In such a device, marketed under the name of Stor-U-Veyor, the slots in the sections of the linkage from which each garment was suspended, were numbered consecutively in correspondence with the numbers of the claim tickets of the garment owners. This system required the use of a counter-file in which were kept the work invoices to which the customers' claim tickets related. Congestion of attendants sometimes occurred at the location of this counter-file, and complications developed from time to time through erroneous transposition of finished work during the course of loading upon the conveyor. Loss of a claim ticket by a customer resulted in difficulty in locating his garment. Another inadequacy of the Stor-U-Veyor device was found in the limited capacity of a numbered slot to accommodate the space requirements of

several garments in process for a single customer and due for simultaneous delivery. In 1957, Mr. Weiss evolved a modification of the Stor-U-Veyor by suspending from the linked sections thereof a succession of overlapping slick rail sections upon which the garments could be hung and along the surface of which the garment hangers could be manually moved in either direction, and collectively transported by a power-driven conveyor system similar in all respects to that employed in the Stor-U-Veyor device. The so-called slick rail means of storing, moving and selecting suspended garments has been well known in the art since 1945. Such rails were frequently suspended from overhead brackets and were usually of tubular construction. Weiss admitted that he had seen slick rails made of flat stock suspended by underslung hooks, before contriving his patented device. Several of the patents cited by the Patent Office in the patent in suit covered devices exemplifying the slick rail feature. Indeed, as early as 1907, Mancha, in United States Patent No. 841,261, disclosed a slick rail for the suspension of garments in clothes cabinets. In its widely distributed, copyrighted 1953 catalogue of fittings, Dahlberg Machinery Company, of Duluth, Minnesota, disclosed sections of slick rails suspended by J hooks on trolleys horizontally movable along circular and curvilinear rails for the storage and display of garments in laundries, dry cleaning plants, garment factories and department stores.

As has been already stated, the plaintiff claims five novel features for its device. It is conceded that, if invention exists, it is to be found only in the succession of overlapping rack rail components of such conformation and so suspended as to permit of the horizontal manual movement of garments hung thereon during their power conveyance around the curvilinear course of the frame members or links from which they are suspended. Plaintiff concedes that its claimed invention is a modification of its own Stor-U-Veyor device, and that all but the rack rail feature described in the patent in suit was old in the art when the application was filed.

Assuming that the patented device is an improvement over the Stor-U-Veyor, and over that disclosed by Byrne in his United States Patent No. 2,778,504, issued January 22, 1957, the issue of the validity of the patent presently in suit is to be determined by the answer to the simple question whether the differences between the subject matter of the Weiss device and the prior art are such that the subject matter as a whole would have been obvious, at the time of the alleged invention, to a person having ordinary skill in the art to which the subject matter pertains. 35 U.S.C. § 103. The device described in the patent in suit is a combination. In such a case, the Court is required to scrutinize the claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Lincoln Engineering Co., etc. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Aetna Steel Products Corp. v. Southwest Products Co., 9 Cir., 1960, 282 F.2d 323. However, in applying the stated rule, the questioned combination must be appraised as of the date of the inventor's conception thereof. Obviousness in retrospect should not blind the appraising authority to the possibility that the combination under examination may not have been obvious to an artisan skilled in the art at the time of its conception.

Consumer use of plaintiff's Stor-U-Veyor evoked two general criticisms of its features: (1) the limited capacity of each of the slots to accommodate multigarment cleaning orders, and (2) the waste of storage capacity resulting from the assignment to a particular slot bearing a specific number corresponding to a particular customer's order. Neither of these limiting factors was characteristic of the slick rail storage racks which were old in the art, as taught for example by Mancha in his United States

Patent No. 841,261 in 1907, and by Condit in his United States Patent No. 2,491,300 in 1949. The objective of Weiss was the combination with the Stor-U-Veyor of a continuous rail from which the garments on their wire hangers could be suspended, which would permit the manual movement of garments in either horizontal direction thereon, to make room for other garments as space was vacated by those removed, and at the same time to allow the undelivered garments to remain in numerically consecutive order, and susceptible of collective movement by the power conveyor. To modify the Stor-U-Veyor in order to achieve the objectives contemplated by Weiss, one would have to suspend from the frame members or links of the old device either a flexible continuous steel band, suspended in a vertical plane, which could bend in following the course of the frame members or links as they moved around the curved portions of the trolley rail; or a succession of horizontal rail sections articulated with one another, each section suspended from and in general parallel relation to one of the pivotally connected frame sections or links of the Stor-U-Veyor. This second alternative arrangement, however, presented obstructions at the points of contact between the rail sections, to the ready manual movement of the garment hangers from one section to another. Use between the rack rail sections of the type of pivotal connection employed to link the successive frame members of the Stor-U-Veyor device would impair the slick rail effect which Weiss sought to achieve. The employment of a hinge pin at the junctions of the rail sections which the inventor contemplated was thus contraindicated. How, therefore, could he achieve a succession of separate rail sections, each in physical contact with that adjoining in each direction, along the top of which substantially horizontal unobstructed movement of a suspended article might be accomplished along an uninterrupted surface while the aggregation of sections was moving with the aggregation of frame members in their course around the trolley rail. To accomplish this objective, Weiss suspended from each frame or link member, by means of two J hooks or hanger members, in generally parallel relation to the link to which the hooks were affixed, a section of strap steel in a generally horizontal attitude, but with one unchamfered end slightly lower than the opposite chamfered end. The chamfered end of each section rested upon the top surface of the squared end of the immediately adjoining section, thus permitting the movement of a garment hanger from one rail section to the next in either direction. By this means a substantially slick rail feature was hung from the slot-less frame members of a Stor-U-Veyor type conveyor. The endless succession of these rail sections thus became movable about the trolley rail in an orbit similar to and below that of the supporting links without physical separation of either end of a rail section from its contact with the rail sections immediately adjoining it. While Weiss by this means achieved the objective which he sought, the difficult question which I am called upon to answer is whether the modification which he effected amounted to invention. Would it have been likely to have suggested itself to a mechanic skilled in the art which embraced conveyors and storage racks for hanging garments? The suspension of a slick rail by means of J hooks from walls or standing frames, so as to permit the continuous horizontal movement of coat hangers hung from the rail, was well known in the art as early as 1953, as appears from disclosures in the brochure of Dahlberg Machinery Company illustrating and describing its products then on the market, to which reference has heretofore been made. Among the illustrations contained in that brochure is that of a "hook for flat stock —No. H105—⅝″ hot roll steel". This hook has its upper end threaded for connection with a supporting bracket, and the lower end of the hook is slotted to receive a flat steel strip which, as suspended in a vertical plane, permits garment hangers to be manually moved along the upper edge of the strip. In the legend relating to this illustration is

the manufacturer's reminder that the "flat stock can be curved to requirements." The same brochure illustrates a suspended J hook with its lower end concave to receive a cylindrical pipe rail to extend continuously throughout a succession of similar supporting hooks. There is also disclosed in that publication the illustration of a section of slick rail, cylindrical in shape, suspended from a trolley rail by J hooks, the upper ends of which pass through rollers traveling longitudinally along the top of the trolley rail. The same brochure of Dahlberg illustratively advertises its power-driven revolving garment conveyor systems, carrying garments on standard hangers steadily from station to station, and the slick rail system manufactured to work separately or in conjunction with these conveyor systems.

At one time during the Patent Office proceedings in the case here under consideration, Weiss described the rack rail sections as "articulated" with one another, but he subsequently voluntarily withdrew that adjective, stating that its employment was unnecessary. It is mechanically obvious that a continuous slick rail all in one piece, if suspended from a Stor-U-Veyor or similar mechanism, could not follow the course of the supporting links as they proceeded around the curved portions of the trolley rails. Therefore, it was essential to sectionalize the slick rail in a manner generally corresponding to the sections of the supporting links of the conveyor so that each slick rail section would exactly follow, because rigidly suspended from, its supporting link. The overlapping of the slick rail sections would create an obstruction to ready movement of a hanger from one section to another unless the angulation created by the squared end on change of direction were reduced by chamfering. The level of the top of the chamfered end above the surface of the adjoining section upon which it rested required a slight downward incline of the undersection in order to maintain an approximately horizontal overall top surface for the succession of sections along

which the garment hangers could be easily moved. Actually the aggregation of the sections does not achieve a true slick rail because of this lack of a truly horizontal continuous surface throughout their succession. While the device described in the patent in suit might not be as readily apparent to a mechanic skilled in the art as was that involved in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, it is suggestive of the situations presented in Lincoln Engineering Co., etc. v. Stewart-Warner Corp., supra, and in Rogers v. Alemite Corp., 1936, 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, in which each of the component elements were found to perform, in combination, the same functions which each performed in the prior art. See also cases cited at page 550 of 303 U.S., at page 665 of 58 S.Ct. of Lincoln Engineering Co., supra, and Modern Art Printing Co. v. Skeels, 3 Cir., 1955, 223 F.2d 719.

■ Analyzing plaintiff's combination from the viewpoint of the relation of each of its parts to the prior art, we find (1) a curvilinear continuous trolley rail for the conveyance around the course thereof by mechanical power of articles suspended therefrom; (2) a succession of pivotally connected links suspended from the trolley rail and movable along the same under electric power; (3) a section of slick rail suspended horizontally from and in parallel relation to each of the pivotally connected links, and permitting manual movement there-along of garments and other suspended articles; and (4) movability of the rail and link sections simultaneously along the curvilinear trolley rail. All of the foregoing features, old in the art, are to be found in combination in the device disclosed by the patent in suit. That device, however, has one further feature, i. e., the manner of connecting each of the suspended rack rail sections, with its adjoining sections, so as to permit the aggregation of sections to move in the linear and curvilinear course of the suspending link sections. Reduced to this aspect, is there novelty in the chamfer-

ing and overlapping treatment, and inter-arrangement of the rack rail sections? Beveled steel foot-plates, bridging the clearance between the end cross-members of the frames of coupled railroad passenger cars in slidably overlapping relation therewith and moving freely in accommodation to the direction changes of the cars on curved tracks have been in use for many years. There is no novelty in the overlapping feature of. plaintiff's rack rail sections. The chamfer of one end of each section is an obvious means of reducing the obstructive effect of the end presenting a full cross-section. I am, therefore, impelled to the conclusion that the patent in suit is invalid.

 If I am correct in finding the patent invalid, it is unnecessary to decide the issue of infringement. However, if the patent is valid, I conclude that it is not infringed by defendant's accused device. While the latter incorporates a slick rail, which is well known in the prior art, the slick rail of the accused device is continuous and flexible, while that of the patent here is sectional, with the chamfered end of each section overlapping the squared end of the adjoining section. The slick rail feature of each device differs critically from that of the other in composition, construction, arrangement and manner of functioning. The flexible continuous band in the Rail-ex PC Conveyor is not the mechanical equivalent of the chamfered, overlapping sections of rack rail disclosed in the patent in suit. Plaintiff may not consistently defend the claims in suit against the accusations of indefiniteness under 35 U.S.C. § 112 by interpreting the claims in the light of the drawings and specifications, and then attempt to read on the language of the claims without reference to the drawings and specifications to support the charge of infringement. If the claims are to be construed upon their language alone, then they offend § 112 by failing to point out particularly and to claim distinctly the subject matter which the applicant regards as his invention. If so, the claims are invalid and therefore not infringed. On the other hand, if the claims are to be construed with the aid of the drawings and specifications in order to meet the requirements of § 112, then the bare language of the claims may not be read on the accused device as determinative of infringement. "A word by word correspondence (between a claim in suit and an accused device) is not alone enough. Edison v. American, etc., Co., 151 F. 769, 773 (C.C.A.2); Silver & Co. v. Sternau & Co., (C.C.A.) 258 F. 448, 451; Goodyear, etc., Co. v. Spaulding, (C.C.) 101 F. 990, 994. We must have recourse to the specifications to see how far the means there disclosed correspond with those used by the defendant. Westinghouse v. Boyden, etc., Co., 170 U.S. 537, 571, 18 S.Ct. 707, 42 L.Ed. 1136; Westinghouse, etc., Co. v. New York Air Brake Co., 119 F. 874, 884 (C.C.A.2); Juengst v. Hill Pub. Co., (D.C.) 267 F. 428, 434, affirmed 267 F. 435 (C.C.A. 2)." L. Hand, J., in Grubman Engineering & Mfg. Co., Inc. v. Goldberger, 2 Cir., 1931, 47 F.2d 151, 152. While in the patented, as well as in the accused device there is a "slick rail" surface over which the stored garments can be manually moved, the surface in the patented device is non-continuous and composed of contiguous though separate horizontal sections, while in the accused device the effect is achieved by a continuous band in a verticle plane.

This opinion embodies my findings of fact and conclusions of law. An appropriate order may be presented.